Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DEL TATTO,<br><br>                              Plaintiff,<br><br>                vs.<br><br>SILICON MOTION TECHNOLOGY CORPORATION, JAMES CHOW, WALLACE C. KOU, STEVE CHEN, TSUNG-MING CHUNG, LIEN-CHUN LIU, YUNG-CHIEN WANG, HAN-PING D. SHIEH, KENNETH KUAN-MING LIN, and NELSON DUANN,<br><br>                              Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, John Del Tatto ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Silicon Motion Technology Company ("Silicon Motion" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to MaxLinear, Inc., ("Parent") through

merger vehicle Shark Merger Sub ("Merger Sub," and together with Parent, "MaxLinear") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed cash and stock transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a May 6, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Silicon Motion's common stock will be converted into the right to receive (i) $23.85 in cash, without interest and (ii) 0.097 shares of MaxLinear's common stock. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

3.     Thereafter, on June 15, 2022, MaxLinear filed a Registration Statement on Form S-4 (the "Registration Statement"), with the SEC in support of the Proposed Transaction.

4.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.     In violation of the Exchange Act, on June 15, 2022, Defendants caused to be filed the materially deficient Registration Statement. The Registration Statement is materially deficient and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for

Silicon Motion and MaxLinear, provided by Silicon Motion and MaxLinear management to the Board's financial advisor Goldman Sachs (Asia) L.L.C ("Goldman Sachs") and MaxLinear's financial advisor BMO Capital Markets Corp. ("BMO"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Goldman Sachs, and/or BMO and provided to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

7.      Plaintiff is a citizen of New York and, at all times relevant hereto, has been a Silicon Motion stockholder.

8.      Defendant Silicon Motion designs, develops, and markets NAND flash controllers for solid-state storage devices. Silicon Motion is incorporated in The Cayman Islands and has its principal place of business at Flat C, 19/F, Wing Cheong Commercial Building, Nos 19-25 Jervois Street Hong Kong.  Shares of Silicon Motion common stock are traded on the NasdaqGS Stock Exchange under the symbol "SIMO."

9.      Defendant James Chow ("Chow") has been a Director of the Company at all relevant times.

10.      Defendant Wallace C. Kou ("Kou") has been a director of the Company at all relevant times. In addition, Kou serves as the Company's Chief Executive Officer ("CEO") of the Company.

11.      Defendant Steve Chen ("Chen") has been a director of the Company at all relevant times.

12.     Defendant Tsung-Ming Chung ("Chung") has been a director of the Company at all relevant times.

13.     Defendant Lien-Chun Liu ("Liu") has been a director of the Company at all relevant times.

14.     Defendant Yung-Chien Wang ("Wang") has been a director of the Company at all relevant times.

15.     Defendant Han-Ping D. Shieh ("Shieh") has been a director of the Company at all relevant times.

16.     Defendant Kenneth Kuan-Ming Lin ("Lin") has been a director of the Company at all relevant times.

17.     Defendant Nelson Duann ("Duann") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Party MaxLinear is a microchip manufacturer. Shares of MaxLinear common stock are traded on the New York Stock Exchange under the symbol "MXL."

20.     Non-Party Merger Sub is a wholly owned subsidiary of MaxLinear created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NasdaqGS Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

24.    Silicon Motion Technology Corporation, together with its subsidiaries, designs, develops, and markets NAND flash controllers for solid-state storage devices. It offers controllers for computing-grade solid state drives (SSDs), which are used in PCs and other client devices; enterprise-grade SSDs used in data centers; eMMC and UFS mobile embedded storage for use in smartphones and IoT devices; flash memory cards and flash drives for use in expandable storage; and specialized SSDs that are used in industrial, commercial, and automotive applications. It markets its controllers under the SMI brand; enterprise-grade SSDs under the Shannon Systems brand; and single-chip industrial-grade SSDs under the Ferri SSD, Ferri-eMMC, and Ferri-UFS brands. The Company markets and sells its products through direct sales personnel and independent electronics distributors to NAND flash makers, module makers, hyperscalers, and OEMs. It operates in Taiwan, the United States, South Korea, China, Malaysia, Singapore, and

internationally. Silicon Motion Technology Corporation was founded in 1995 and is based in Hong Kong, Hong Kong.

25.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the January 26, 2022 press release announcing its 2021 Q4 financial results, the Company highlighted that it had achieved all-time records for full-year revenue and earnings per share and had increased its annual dividend by 43% to $2.00 per ADS.

26.     Speaking on the positive results, CEO Defendant Kou said, "After delivering record operating results in 2021, we are optimistic that 2022 could be another banner year," …… "This year, similar to last year, we further expanded and strengthened our SSD controller program engagements with PC OEMs and eMMC/UFS controllers for smartphones, automotive applications and IoT/smart devices. We are adding to this positive momentum the upcoming launch of our next-generation enterprise-class SSD controllers."

27.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Silicon Motion.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

28.     Despite this upward trajectory, the Individual Defendants have caused Silicon Motion to enter into the Proposed Transaction without providing requisite information to Silicon Motion stockholders such as Plaintiff.

***The Flawed Sales Process***

29.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual

Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30.     The Registration Statement is silent as to whether a committee of the Board composed of disinterested and independent members was created to run the sales process, and if so, their specific powers.

31.     Furthermore, the Proposed Transaction fails to contain a collar mechanism to ensure the merger consideration remains in a realm of reasonableness in the event of a dramatic change in MaxLinear's stock price prior to the consummation of the Proposed Transaction.

32.     Moreover, the Registration Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and MaxLinear and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

34.     On May 5, 2022, Silicon Motion and MaxLinear issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **CARLSBAD, Calif. & TAIPEI, Taiwan--(BUSINESS WIRE)--**May 5, 2022-- MaxLinear, Inc. (NASDAQ: MXL) a leading provider of radio frequency (RF), analog and mixed-signal integrated circuits for broadband, connectivity, and infrastructure markets, and Silicon Motion (NASDAQGS: SIMO), a global leader in NAND flash controllers for solid state storage devices, announced today that they have entered into a definitive agreement under which MaxLinear will acquire Silicon Motion in a cash and stock transaction that values the combined company

at $8 billion in enterprise value. In the merger, each American Depositary Share (ADS) of Silicon Motion, which represents four ordinary shares of Silicon Motion, will receive $93.54 in cash and 0.388 shares of MaxLinear common stock, for total per ADS consideration of $114.34 (based on MaxLinear's May 4, 2022 closing price). The strategic business combination is anticipated to drive transformational scale, create a diversified technology portfolio, significantly expand the combined company's total addressable market, and create a highly profitable cash generating semiconductor leader.

Upon completion of the acquisition, the combined company will have a highly diversified technology platform with strong positions across the broadband, connectivity, infrastructure, and storage end markets. The combination of MaxLinear's RF, analog/mixed-signal, and processing capabilities with Silicon Motion's market leading NAND flash controller technology completes a total technology stack which fully captures end-to-end platform functionality and accelerates the company's expansion into enterprise, consumer, and many other adjacent growth markets. Combined revenues are expected to be more than $2 billion annually and are supported by the technology breadth to address a total market opportunity of roughly $15 billion.

The combined scale is expected to provide additional technology, resources, and capabilities to accelerate product innovation, improve operational efficiency and drive lower manufacturing costs. Together, MaxLinear and Silicon Motion will have expanded resources to better support the combined company's broad customer relationships with their long-term storage requirements. The transaction is expected to generate annual run-rate synergies of at least $100 million to be realized within 18 months after the transaction closes and is expected to be immediately and materially accretive to MaxLinear's non-GAAP earnings per share and cash flow.

"Today's announcement celebrates the combination of two companies that have driven significant innovation in their respective industries for over a decade," said Kishore Seendripu, Ph.D., Chairman and CEO of MaxLinear. "The enhanced scale of the combined organization creates a new significant $2B+ player in the semiconductor industry with compelling positions across a diversified set of end-markets. MaxLinear has demonstrated a strong track record of integration success and looks for this combination to create robust growth, impressive operating margins and significant cash flows."

"For 20 years, we have built Silicon Motion with a commitment to advancing innovation, partnering with all of our valued customers and supporting our colleagues around the world," said Wallace Kou, President and Chief Executive Officer of Silicon Motion. "Combining Silicon Motion with MaxLinear creates significant economies of scale, accelerates our expansion into enterprise storage markets and unites unparalleled intellectual property to continue serving our customers with high-quality expertise and technical support. This transaction will deliver compelling value for shareholders, position our company to achieve our

growth objectives and advance our position in high-growth storage end markets. We are very excited to partner with the MaxLinear team to take the combined company to the next level."

**Transaction Structure and Terms**

Under the terms of the definitive agreement, the transaction consideration will consist of $93.54 in cash and 0.388 shares of MaxLinear stock for each Silicon Motion ADS (American Depositary Share) and $23.385 in cash and 0.097 shares of MaxLinear common stock for each Silicon Motion ordinary share not represented by an ADS. Upon closing of the transaction, MaxLinear shareholders will own approximately 86% of the combined company and Silicon Motion stockholders will own approximately 14% of the combined company. Based on the closing price of MaxLinear shares on May 4, 2022, the implied value of the total transaction consideration for Silicon Motion is $3.8 billion.

MaxLinear intends to fund the $3.1 billion of cash consideration with cash on hand from the combined companies and fully committed debt financing from Wells Fargo Bank, N.A. The transaction is not subject to any financing conditions and is expected to close by the first half of calendar 2023, pending satisfaction of customary closing conditions, including Silicon Motion shareholders' approval and regulatory approvals in various jurisdictions. Additional information to be discussed in the investor call referenced below is available on our website at https://investors.maxlinear.com.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicate that Silicon Motion insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Silicon Motion.

36.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, the Registration Statement fails to provide an accounting of these holdings or the merger consideration which such shares will be exchanged for.

37.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.   Notably, the Registration Statement fails to provide an adequate accounting of the value of these units.

38.     Moreover, certain employment agreements with certain Silicon Motion executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.   These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The Registration Statement fails to adequately disclose the extent of compensation being paid in this context.

39.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of Silicon Motion, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

41.     On June 15, 2022, the Silicon Motion Board and MaxLinear caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the

Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.    The Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

    a.  Specific Information as to why the inclusion of a collar mechanism was not required by the board;

    b.  Specific information regarding whether a committee of the Board was created to run the sales process composed of independent and disinterested Directors, and if so, the specific powers of that committee;

    c.  Whether the confidentiality agreements entered into by the Company with MaxLinear differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

    d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including MaxLinear, would fall away; and

    e.  Communications    regarding    post-transaction    employment    during    the

negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Silicon Motion and MaxLinear's Financial Projections*

43.     The Registration Statement fails to provide material information concerning financial projections for MaxLinear provided by Silicon Motion management to the Board and Goldman Sachs and relied upon by Goldman Sachs in its analyses.  The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

44.     The Registration Statement should have, but fails to provide, certain information in the projections that Silicon Motion management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

45.     With regard to the *Company Financial Projections* prepared by Silicon Motion Management, the Registration Statement fails to disclose material line items for the following metrics:

> a.  Non-GAAP Operating Income, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the impact of stock based compensation;

      b.   Non-GAAP EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income, interest, taxes, depreciation, amortization, and stock-based compensation;

      c.   Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings before interest and taxes, depreciation and amortization, unlevered taxes, capital expenditures, increases in net working capital, and stock based compensation.

46.    The Registration Statement fails to disclose a valuation of Parent, negating Plaintiff's ability to properly evaluate the true value of merger consideration.

47.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.    Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

50.    In the Registration Statement, Goldman Sachs describes its fairness opinion and the

various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51.    With respect to the *Illustrative Discounted Free Cash Flow Analysis*, the Registration Statement fails to disclose the following:

  a.   The specific inputs and assumptions used to determine the range of after-tax discount rates of 9.5% to 11.5%;

  b.   The Company's weighted average cost of capital;

  c.   The range of illustrative terminal values used for the Company;

  d.   The specific inputs and assumptions used to determine an illustrative range of perpetuity growth rates of 1.0% to 2.0%;

  e.   The specific inputs and assumptions used to determine LTM EV/EBITDA multiples ranging from 6.0x to 8.5x;

  f.   The Company's target capital structure weightings;

  g.   The cost of long-term debt for the Company;

  h.   The input used for future applicable marginal cash tax rate for the Company;

  i.    The beta for the Company;

  j.   The range of illustrative enterprise values derived for the Company; and

  k.   The value of cash and cash equivalents as of March 31, 2022.

52.    With respect to the *Selected Transactions Analysis*, the Registration Statement fails to disclose the following:

  a.   The value of each transaction compared;

    b.   The closing date for each transaction compared; and

    c.   The specific inputs and assumptions used to determine NTM price-to-equity multiples of 14.5x to 16.5x.

53.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

54.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Silicon Motion stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

55.    Plaintiff repeats all previous allegations as if set forth in full herein.

56.    Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

57.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC]

may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

58.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

59.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

62.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

65.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.   The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed

the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

66.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Silicon Motion's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

67.     The Individual Defendants acted as controlling persons of Silicon Motion within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Silicon Motion to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Silicon Motion and all of its employees.  As alleged above, Silicon Motion is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise comply with the Exchange Act and

to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 20, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*